NO. 26-2295

# United States Court of Appeals
## for the Fourth Circuit

THE PEOPLE OF THE STATE OF CALIFORNIA,
*ex rel.* ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA

*Plaintiff-Appellant,*

v.

CORTEVA, INC.

*Defendant-Appellee,*

3M COMPANY, ET AL.

*Defendants.*

*In re Aqueous Film-Forming Foams Products Liability Litigation*
No. 2:18-mn-2873-RMG

On Appeal from the United States District Court
for the District of South Carolina at Charleston
Case No. 2:23-cv-1531-RMG

**DEFENDANT-APPELLEE CORTEVA, INC.'S RESPONSE IN OPPOSITION TO CALIFORNIA'S EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL AND SUMMARY REVERSAL**

Michael T. Reynolds
J. Wesley Earnhardt
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
mreynolds@cravath.com
wearnhardt@cravath.com

*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ................................................................................ ii

BACKGROUND ................................................................................................1

ARGUMENT ....................................................................................................4

I. This Court Lacks Jurisdiction to Hear California's Appeal Because the District Court's Order Is Neither a Final Order nor Otherwise Appealable. ....................................................................................4

II. California Is Not Entitled to Injunctive Relief. ............................................7

A. California Is Improperly Requesting That This Court Act as a Court of First Impression. ........................................................ 7

B. California Cannot Satisfy the Requirements for Injunctive Relief. ..... 9

1. California's Request Is Facially Invalid Because It Seeks Relief Unrelated to California's Complaint, Exceeds the Court's Equitable Authority, and Comes with No Showing of Irreparable Harm. ..................................................9

2. California Cannot Show a Likelihood of Success on the Merits, and Both the Equities and the Public Interest Cut Against Injunctive Relief..................................................13

III. California Is Not Entitled to Summary Reversal........................................21

CONCLUSION ................................................................................................24

CERTIFICATE OF COMPLIANCE ..................................................................25

CERTIFICATE OF SERVICE ..........................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Isr. of Am. v. Cuomo*,
980 F.3d 222 (2d Cir. 2020) ....................8

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
172 F.4th 361 (4th Cir. 2026) ....................12

*Bouvet v. Ill. Union Ins. Co.*,
169 F.4th 436 (4th Cir. 2026) ....................passim

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)....................6

*Cline-Thomas v. Keels*,
742 F. App'x 761 (4th Cir. 2018) ....................22

*Collin v. Rectors & Visitors of U. of Va.*,
163 F.3d 598 (4th Cir. 1998) ....................6

*Colvin v. Caruso*,
605 F.3d 282 (6th Cir. 2010) ....................9

*Cramer v. Gen. Tel. & Elecs. Corp.*,
582 F.2d 259 (3d Cir. 1978) ....................19

*De Beers Consol. Mines, Ltd. v. United States*,
325 U.S. 212 (1945)....................11

*Def. Distributed v. Att'y Gen. of N.J.*,
972 F.3d 193 (3d Cir. 2020) ....................5

*Dietz v. Bouldin*,
579 U.S. 40 (2016)....................21

*Eisenberg ex rel. Eisenberg v. Montgomery Cnty. Pub. Schs.*,
197 F.3d 123 (4th Cir. 1999) ....................9

*FTC v. Food Town Stores, Inc.*,
539 F.2d 1339 (4th Cir. 1976) ....................18

*FTC v. Warner Commc'ns Inc.*,
742 F.2d 1156 (9th Cir. 1984) ....................................................................18

*FTC v. Weyerhaeuser Co.*,
665 F.2d 1072 (D.C. Cir. 1981)....................................................................18

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)....................................................................................11

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999)....................................................................................10

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
17 F.3d 691 (4th Cir. 1994) .........................................................................13

*In re Focus Media Inc.*,
387 F.3d 1077 (9th Cir. 2004) .....................................................................12

*In re Korean Air Lines Co.*,
642 F.3d 685 (9th Cir. 2011) .......................................................................22

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) .....................................................................12

*Leadenhall Cap. P'rs LLP v. Advantage Cap. Holdings LLC*,
171 F.4th 155 (2d Cir. 2026) .......................................................................11

*Lovelace v. Lee*,
472 F.3d 174 (4th Cir. 2006) .........................................................................8

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) ...............................................................22, 23

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
473 U.S. 1301 (1985)......................................................................................4

*Omega World Travel, Inc. v. Trans World Airlines*,
111 F.3d 14 (4th Cir. 1997) ...........................................................................9

*Platt v. Mansfield*,
162 F.4th 430 (4th Cir. 2025) .......................................................................22

*Redev. Agency of City of Stockton v. BNSF Ry. Co.*,
643 F.3d 668 (9th Cir. 2011) ....................................................................14

*Rice v. Dotson*,
2025 WL 2969101 (W.D. Va. Oct. 20, 2025) ..........................................9, 10

*Roswell v. Mayor & City Council of Balt.*,
671 F.Supp.3d 607 (D. Md. 2023)..............................................................16

*Sampson v. Murray*,
415 U.S. 61 (1974)......................................................................................12

*Selective Ins. Co. of Am. v. Westfield Ins. Co.*,
73 F.4th 239 (4th Cir. 2023) ........................................................................4

*Sierra Club v. N.C. Dep't of Env't Quality*,
178 F.4th 854 (4th Cir. 2026) ..............................................................12, 13

*Strickland v. Moritz*,
149 F.4th 378 (4th Cir. 2025) .....................................................................21

*United States ex rel. Lutz v. United States*,
853 F.3d 131 (4th Cir. 2017) ....................................................................5, 6

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
198 F.3d 489 (4th Cir. 1999) ..............................................................10, 11

*United States ex rel. Taxpayers Against Fraud v. Singer Co.*,
889 F.2d 1327 (4th Cir. 1989) ...................................................................19

*United States v. Dillard*,
882 F.3d 93 (4th Cir. 2018) ......................................................................22

*United States v. Myers*,
593 F.3d 338 (4th Cir. 2010) .......................................................................4

*Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*,
172 F.4th 976 (7th Cir. 2026) ....................................................................16

**Statutes**

9 U.S.C. § 3 ...........................................................................................6, 7

9 U.S.C. § 16 ..............................................................................................6

15 U.S.C. § 53 ........................................................ 17, 18

28 U.S.C. § 1291 ........................................................ 4

28 U.S.C. § 1292 ........................................................ 4, 5, 6

28 U.S.C. § 1407 ........................................................ 23

**Rules**

4th Cir. Loc. R. 8 ........................................................ 7

4th Cir. Loc. R. 27 ........................................................ 7

Fed. R. App. P. 8 ........................................................ 7

Fed. R. Civ. P. 62 ........................................................ 7

Fed. R. Civ. P. 65 ........................................................ 17, 18

## BACKGROUND

Nearly a year ago, Corteva announced it would split into two public companies ("the Vylor Transaction"). One of those companies, retaining the name Corteva, will be an industry-leading crop-protection company. The other, called Vylor, will be an industry-leading seed company. Both will be well-capitalized and positioned for immediate and long-term success. The nature of the Vylor Transaction has been public for months, and Corteva has expended substantial time, effort, and money preparing for its close. Corteva's Board and management unanimously believe that it is in Corteva's best interests. Barring an order granting California's extraordinary last-minute request, the Vylor Transaction will close in just 7 days, on October 1.

On September 14, 2026—at the eleventh hour, without approval of Plaintiffs' Co-Lead Counsel, and with ***no judgment*** against Corteva—California moved in the multidistrict litigation captioned *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) (the "MDL"),[1] pending before the United States District Court for the District of South Carolina (the "District Court"), for leave to file a motion for a temporary restraining order and preliminary injunction to prevent the Vylor Transaction and to freeze $22

[1]Docket entries in the MDL are cited as "Dkt.[X]."

billion in assets (the "MDL Motion"). California's supporting papers—a whopping 1,250 pages, including ***seven*** expert declarations—clearly had been in the works for months. The District Court denied the MDL Motion the following day, stating, "other venues clearly exist which are better suited to addressing [California's requested] relief." (Dkt.11627.) California then sat on its hands for ***three days*** before seeking emergency relief here (the present "Motion").

California's underlying arguments have no genuine factual or legal basis. There is no judgment against Corteva, let alone one threatening the viability of one of the world's leading crop-protection companies. The novel theories on which California bases its claims are far-fetched, unsubstantiated, and rely on attenuated causation theories. The injunctive relief it seeks would be unprecedented and, indeed, beyond the limits of Federal court authority under binding Supreme Court precedent.

Most fundamentally, the Vylor Transaction cannot possibly cause California irreparable harm. No assets will move beyond California's reach. Vylor will be incorporated in Delaware and headquartered in Iowa, and if it turns out that Corteva is undercapitalized (it is not) and unable to satisfy a future hypothetical judgment (which is extraordinarily unlikely for numerous reasons), California could pursue post-closing fraudulent transfer claims against Vylor and Corteva. In

fact, California already is pursuing such claims against the DuPont Defendants,[2] demonstrating beyond doubt the availability of that remedy.[3] (Curiously, California filed an amended complaint in the MDL just days before filing its MDL Motion but included no allegations regarding the Vylor Transaction, despite having at the ready the motion and 1,250 pages of supporting material.)

California cannot show that summary reversal is appropriate. California identifies no legal error by the District Court, let alone a demonstrably erroneous application of Federal law. California seems to disagree with the District Court's docket-management decisions, but managing a massive MDL docket is well within the District Court's discretion.

Thus, California's choice to file at the last minute and delay its appeal appears to be tactical. Rather than heed the District Court's suggestion to seek relief elsewhere, California chooses to seek an extraordinary injunction from this appellate court in the first instance, a transparent attempt to obtain unprecedented

---

[2] "DuPont Defendants" refers to EIDP, Inc. ("EIDP"), Corteva, The Chemours Company ("Chemours"), The Chemours Company FC, LLC, DuPont de Nemours, Inc. ("New DuPont"), and Qnity Electronics, Inc.

[3] California dedicates a significant portion of its recent filings to allegations that the 2015 Chemours spinoff and 2019 DowDuPont transaction were fraudulent transfers. In this response, Corteva focuses on the law and facts most relevant to the Vylor Transaction. To be clear, however, Corteva disputes California's allegations regarding prior transactions, which have not been proven in any jurisdiction.

relief while insulating its expert declarations from scrutiny and its factual assertions from even minimal adversarial testing.

Upon examination, virtually everything in California's papers falls short. California hopes for a Hail Mary injunction—issued without regard to the merits but only because time is short. California should not benefit from an emergency of its own making. Its Motion should be denied.

## ARGUMENT

### I. This Court Lacks Jurisdiction to Hear California's Appeal Because the District Court's Order Is Neither a Final Order nor Otherwise Appealable.

This Court has jurisdiction over appeals from "final decisions" of district courts. 28 U.S.C. § 1291; *see United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010). "The denial of a motion for leave to file isn't a final decision." *See Bouvet v. Ill. Union Ins. Co.*, 169 F.4th 436, 443 (4th Cir. 2026). "Nor is the denial of leave among the limited set of interlocutory orders over which 28 U.S.C. § 1292 gives [the Court] jurisdiction." *Id.* Moreover, denials of temporary restraining orders are not immediately appealable. *See Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1303 (1985). Nor is California appealing an order "granting, continuing, modifying, refusing or dissolving [an] injunction[]." 28 U.S.C. § 1292(a)(1); *see Selective Ins. Co. of Am. v. Westfield Ins. Co.*, 73 F.4th 239, 242-43 (4th Cir. 2023). Rather, it is challenging an order

denying leave. (Dkt.11627.) That order is not immediately appealable. *Bouvet*, 169 F.4th at 443.

California argues that the District Court's order "amounts to" a denial of the merits of its preliminary injunction motion. (Mot. at 9.) It does not. The "practical effect of the order" was ***not*** to deny California's request with prejudice. *United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017). To the contrary, the District Court ruled that "[w]hile [California] has every right to challenge the transactions described in the proposed TRO Motion, other venues clearly exist which are better suited to addressing [California's requested] relief." (Dkt.11627.) At most, then, the District Court's ruling was a denial "without prejudice"; its order "was not the final word on the request." *Def. Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 199 (3d Cir. 2020). Because the District Court did not "grant or deny part of the substantive relief sought," its order is "not immediately appealable under section 1292(a)(1)." *Id.* (citation omitted).

Even if California *could* show that the District Court effectively denied California relief, that still would be insufficient: California must show that the order (1) "may have a 'serious, perhaps irreparable consequence,'" and (2) "can only be 'effectually challenged' through immediate appeal." *Lutz*, 853 F.3d at 139.

California satisfies neither element. California will suffer *no* harm absent immediate review, much less harm that is "serious" or "irreparable." *See*

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). To the extent they exist, the harms California claims to face can be remedied by money damages. *See infra* Section II. Moreover, the District Court did not foreclose relief; it stated there are "better suited" venues. (Dkt.11627.) Nor was the District Court's order insulated from "effectual[] challenge." *See Lutz*, 853 F.3d at 139. Rather, California made the tactical choice not to seek relief elsewhere, but a party cannot complain when its own actions are the reason for its predicament. *See Collin v. Rectors & Visitors of Univ. of Va.*, 163 F.3d 598 (4th Cir. 1998) (table decision) ("An appellant may not complain on appeal of errors he himself induced or invited.").

California looks to *Bouvet* for a different result, but *Bouvet* offers no help. There, this Court reversed the denial of leave to seek a stay pending arbitration under the Federal Arbitration Act ("FAA"). *Bouvet*, 169 F.4th at 443. The Court explained that the District Court's order was ***not*** immediately appealable under § 1292—the basis for jurisdiction California asserts here—but rather under the FAA because 9 U.S.C. § 16(a)(1)(A) makes "an order refusing … a stay under [9 U.S.C. § 3]" immediately appealable. *Id.* at 443. In concluding jurisdiction existed, this Court importantly noted that the District Court's denial meant "there

was nothing left for [the movant] to do" to seek relief. *See id.*[4] That is obviously not true here. (Dkt.11627.)

Because this Court lacks jurisdiction over California's appeal,[5] the Court should deny California's request for emergency relief.

## II. California Is Not Entitled to Injunctive Relief.

Even if this Court had jurisdiction, it should deny California's request for an injunction pending appeal. This Court is not a court of first impression, and California failed to seek interim relief from the District Court. On substance, injunctive relief is unavailable as a matter of law, and even if it were not, California cannot make the required showing.

### A. California Is Improperly Requesting That This Court Act as a Court of First Impression.

Before seeking injunctive relief on appeal, a party must first seek such relief from the district court. Fed. R. App. P. 8(a)(1)(C); *see* Fed. R. Civ. P. 62(d). California failed to do so. Nor does California attempt to make "a specific showing of the reasons the application was not made to the district court in the first instance." 4th Cir. Loc. R. 8.

---

[4]In *Bouvet*, the relevant motion could be heard *only* in "the court in which the suit is pending." *See* 9 U.S.C. § 3. By contrast, the District Court indicated that "other venues clearly exist." (Dkt.11627.)

[5]Corteva respectfully reserves the right to file a motion to dismiss California's appeal for lack of jurisdiction within the time allowed. *See* 4th Cir. Loc. R. 27(f).

California suggests that seeking relief in the District Court would be "impracticable." (Mot. at 22.) Not so. California asserts that the Vylor Transaction is imminent, (*id.*), but the urgency is of California's own making. California has known about the Vylor Transaction for nearly a year, indicated *four months ago* its intent to seek injunctive relief, and waited *three days* from the District Court's order to seek emergency relief here. (Dkt.11616-2, at 2-3.)

California speculates that the District Court would have rejected its request on the merits. But the District Court has not reached *any* merits—it indicated only that "other venues" were "better suited" to hear them. (Dkt.11627.) Without these predicate steps, the Court should decline to issue California's requested relief. *See Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222, 225 (2d Cir. 2020).

California's true request is that this Court serve as a court of first impression. It asks the Court to issue sweeping injunctive relief before any legal ***or factual*** determinations have been made. The Court should decline the invitation. It is a bedrock principle that this Court is "a court of review, not of first view." *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (citation omitted).

Indeed, in these circumstances, this Court will grant injunctions only where "the record clearly established the plaintiff's right to an injunction" and "a hearing would not have altered the result," as "no fact on which [this Court] based

[its] opinion is challenged." *See Eisenberg ex rel. Eisenberg v. Montgomery Cnty. Pub. Schs.*, 197 F.3d 123, 134 (4th Cir. 1999). Here, virtually every fact and legal principle underlying California's Motion is hotly challenged.

### B. California Cannot Satisfy the Requirements for Injunctive Relief.

California's request for injunctive relief—both in this Court and the District Court—is facially invalid on the merits. California seeks injunctive relief (1) for claims it has not pleaded; (2) to secure hypothetical future money judgments it has not secured; and (3) without showing any possibility of irreparable harm. Such claims fail on their face.

#### 1. California's Request Is Facially Invalid Because It Seeks Relief Unrelated to California's Complaint, Exceeds the Court's Equitable Authority, and Comes with No Showing of Irreparable Harm.

*First,* a preliminary injunction may "never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). Thus, a preliminary injunction motion must be "related to the underlying complaint; it is not an appropriate vehicle for asserting new claims." *Rice v. Dotson*, 2025 WL 2969101, at *2 (W.D. Va. Oct. 20, 2025); *see Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("[Plaintiff] had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint.").

California has asserted no claims relating to the Vylor Transaction in its operative Complaint. Vylor is not even mentioned, despite California amending its Complaint—just *four days* before filing its MDL Motion—to assert allegations about *other* transactions. (*See* Second Am. Compl., *California ex rel. Bonta v. 3M Co.*, No. 2:23-cv-1531-RMG (D.S.C. Sept. 10, 2026), Dkt.58.) A preliminary injunction motion "is not an appropriate vehicle for asserting new claims." *Rice*, 2025 WL 2969101, at *2.

*Second*, California's request is facially invalid because federal courts lack authority to enter injunctions to preserve assets for hypothetical future damages judgments. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). But potential future damages are precisely what California seeks. As California itself puts it, "[t]he People ***merely seek to preserve funds*** . . . ***to be held for potential payment of massive PFAS liabilities***." (Dkt.11582-1, at 34-35 (emphasis added).) California cannot hide that it seeks money damages to remedy alleged environmental harms. Federal courts have no authority to freeze assets or enjoin transactions under those circumstances. *Grupo Mexicano*, 527 U.S. at 333.

Federal courts may grant injunctive relief to freeze assets only when a party has a lien or equitable interest in "specific assets." *See United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496 (4th Cir. 1999). California

has no such lien. And "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to plaintiff particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). By contrast, California seeks to recover an undifferentiated portion of Corteva's assets as damages for purported environmental harms. Courts lack the authority to issue injunctions to preserve assets in such cases. *See Rahman*, 198 F.3d at 496; *Leadenhall Cap. P'rs LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155, 162 (2d Cir. 2026) (explaining that "whether *Grupo Mexicano* permits pre-judgment restraint on [a defendant's] assets depends on whether the [plaintiff] properly claims a 'lien or equitable interest' in those assets"); *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 222-23 (1945) (explaining that preliminary injunctions based only on an underlying damages claim have never been "justified in the long history of equity jurisprudence").

California's request to enjoin the Vylor Transaction, which is poised to create two publicly traded Fortune 500 companies, appears to be without precedent. The few cases where courts have prospectively enjoined transfers or frozen assets concerned specific assets and involved extreme circumstances, such as actual fraud, assets moving outside of the country, and rapid depletion of substantially all of a defendant's assets. *E.g.*, *Rahman*, 198 F.3d at 493-94 (fraud

on the United States, giving rise to claims against fraudulently obtained funds); *In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2004) (foreign shareholder directing rapid depletion of assets from insolvent company); *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) (fraud on a retirement plan and rapid depletion of assets from closely held corporation through "blatant self-dealing"). None of these circumstances is present here.

*Third*, California cannot demonstrate irreparable harm, a fundamental prerequisite to any injunctive relief. *Sierra Club v. N.C. Dep't of Env't Quality*, 178 F.4th 854, 858 (4th Cir. 2026). "[E]ven a 'possibility' that 'adequate compensatory or other corrective relief will be available at a later date'" should cause a court to "hesitate before concluding a plaintiff's harm is 'irreparable.'" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 372 (4th Cir. 2026) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

California's theory is that the Vylor Transaction "will result in a destabilized New Corteva unable to satisfy PFAS judgments." (Mot. at 20.) But this argument leaves California facing a Catch-22. Either (1) California is wrong, and Corteva will be adequately capitalized (it will be) and capable of paying any judgment California might one day achieve—in which case California will suffer no irreparable harm; or (2) Corteva will be inadequately capitalized (it will not be), and California could assert post-closing fraudulent transfer claims to recover

damages—in which case California again will suffer no irreparable harm. Either way, California can seek money damages. "Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).

### 2. California Cannot Show a Likelihood of Success on the Merits, and Both the Equities and the Public Interest Cut Against Injunctive Relief.

California cannot satisfy any of the remaining requirements for injunctive relief. California (1) has not "made a strong showing that [it] is likely to succeed on the merits" of its underlying claims; nor can it show (2) that it "will be irreparably injured absent" emergency relief (discussed above); (3) that the injunction will not "substantially injure the other parties"; or (4) that the "public interest" favors its request. *Sierra Club*, 178 F.4th at 858.

***No Likelihood of Success on the Merits.*** Each of California's claims rests on novel and unsubstantiated PFAS liability theories that no court has endorsed, premised not on any PFAS manufacturing or conduct by Corteva directed at California, but on a generalized notion that *some* defendant must have known its PFAS would reach the state. Corteva has never manufactured or sold any PFAS products, and California identifies no Corteva conduct or product that created or contributed to any alleged nuisance. Even as to EIDP, California fails to

allege that EIDP actively or knowingly generated PFAS pollution in California, which would be required to state a claim for public nuisance. *See Redev. Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 674 (9th Cir. 2011).

Further, and most fundamentally, California cannot show that the Vylor Transaction constitutes either an actual or constructive fraudulent transfer. There is no evidence of intent to hinder, delay, or defraud any creditor; the transaction reflects legitimate business justifications, and no badges of fraud are present that would alter this conclusion. Corteva is far from insolvent now, with a market capitalization of nearly $55 billion and strong financial performance, and post-transaction is projected to be an investment-grade Fortune 500 company with expected EBITDA of $1.43 billion and annual revenues of $7.8 billion. Independent financial advisory analysis and related opinions confirm that both Corteva and Vylor will be solvent, adequately capitalized, and able to pay debts as they become due.

California's description of Corteva's potential PFAS exposure is misleading at best. Even a cursory review reveals that California's so-called expert analyses are fundamentally flawed: Among other things, they double-count alleged liabilities, calculate contingent liabilities at face value without discounting for probability, and do not consider Corteva's contribution and indemnification rights against other PFAS defendants.

In fact, Plaintiffs' Co-Lead Counsel in the MDL have represented to the District Court that the DuPont Defendants' combined potential exposure is, at most, "only three to seven percent of the MDL defendants' total alleged PFAS-related liabilities." (*See* Dkt.4471, at 22.) And Corteva's own potential exposure is significantly limited by various liability, indemnification, and cost-sharing agreements among Chemours, New DuPont, EIDP, and Corteva.[6]

On each and every theory, California fails to carry its burden. California's inability to establish a likelihood of success on the merits would only be more apparent if Corteva were permitted to challenge California's last-minute dump of 1,250 pages of declarations.

[6]Over eleven years ago, EIDP spun off its performance chemicals business into Chemours. In that transaction, Chemours was assigned certain of EIDP's liabilities and agreed to indemnify EIDP for them. Eleven years later, Chemours remains a successful public company. The DowDuPont transaction was completed in June 2019, which involved EIDP and the Dow Chemical Company combining and then separating into three public companies: Dow Inc., New DuPont, and Corteva (with EIDP as a subsidiary). As part of the DowDuPont transaction, Corteva and New DuPont agreed to share financial responsibility for EIDP's legacy liabilities to the extent not already indemnified by Chemours, and Corteva's share was set at just 29%. And in January 2021, EIDP, Corteva, New DuPont, and Chemours entered a Memorandum of Understanding governing how they will split responsibility for certain future payments to potential PFAS judgment-creditors, with Corteva's share set at approximately 14.5%. The history of the MDL clearly demonstrates the DuPont Defendants' commitment to, and success in, systematically managing the potential liabilities at issue—including in close collaboration with the District Court and the Plaintiffs' Executive Committee in the MDL. (*See* Dkt.8380.)

***The Balance of the Equities Favors Corteva.*** The balance of the equities independently defeats California's request for a preliminary injunction and for emergency relief. California waited nearly a year after learning of the Vylor Transaction—and four months after declining to discuss with Corteva further—before seeking relief. After the District Court denied the MDL Motion, California waited another three days before seeking emergency relief. This inexcusable delay alone should preclude California's requested relief. *See Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 991 (7th Cir. 2026). California attempts to manufacture a need for extraordinary relief through its own tactical delay. But a plaintiff seeking equitable relief must show it acted diligently and without undue delay. *Roswell v. Mayor & City Council of Balt.*, 671 F.Supp.3d 607, 618 (D. Md. 2023) (concluding that the plaintiff's unexplained delay weighed against him in balancing the equities). If California ever can prove actual harm, it can receive money damages. There is no reason to rush a judgment.

On the other side of the ledger, the concrete harms to Corteva and third parties substantially outweigh California's speculative injuries. Corteva's Board and management have invested substantial time and effort—and over $200 million—towards effectuating a transaction they believe is in Corteva's interests. With the Vylor Transaction, the seed business and the crop-protection business can innovate and grow as independent, focused companies—crucial at a time when

innovation is critical and competition is fierce. An injunction would moot that work while hamstringing the Board's business judgment.

The resulting disruption from California's request would extend beyond Corteva. It would jeopardize the interests of numerous stakeholders—employees, vendors, shareholders, and customers—and set a terrible precedent by subordinating a company's business expertise to speculative claims of a single plaintiff who has not even obtained a judgment.

The harms facing Corteva and third parties if California prevails on its last-minute request are extensive. To name just a few: Thousands of employees would be left in the lurch; farmers, suppliers, and commercial counterparties would face significant disruption and confusion; Corteva would need significant bridge financing on short notice and potentially unfavorable terms; Vylor may need to amend or terminate its pending offers to exchange existing debt of EIDP; Corteva could face mandatory redemptions of certain notes issued by Vylor and EIDP; and Corteva's investors would face uncertainty, potentially depressing their investments, the Company's value, and the Company's market reputation.

California cites cases where courts of appeals have enjoined mergers pending review of antitrust challenges brought by the FTC, (Mot. at 21), but those cases are fundamentally different from this one. There, the FTC sought injunctions pending appeal under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), *not* Rule

65. *See, e.g.*, *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1341 (4th Cir. 1976); *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984); *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1073-74 (D.C. Cir. 1981). That distinction matters: Under Section 13(b), "the Commission need not show irreparable harm to obtain a preliminary injunction," and, "private equities alone [can]not justify denial of a preliminary injunction." *Warner Commc'ns*, 742 F.2d at 1159-60, 1165. These cases are thus wholly inapplicable to an argument, like California's, under Rule 65. *See Weyerhaeuser*, 665 F.2d at 1082 (explaining that the FTC is "not held to the high thresholds applicable where private parties seek interim restraining orders").

In any event, even if those cases had addressed Rule 65, the harms alleged in the underlying complaints were the challenged mergers themselves, and the only remedy sought was to prevent the mergers altogether, which could not occur if they closed. *See, e.g.*, *Food Town Stores*, 539 F.2d at 1341-42 (single-judge, in-chambers opinion issuing a TRO against a merger where the underlying action challenged the merger itself). Here, California has never filed any complaint related to the Vylor Transaction, and the remedy it seeks (money damages for alleged PFAS liability) can be obtained even after the Vylor Transaction closes if California can ever prove its claims. These limited and unique cases thus provide California with no support for its unprecedented request.

Nor does *United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir. 1989). There, the United States laid claim to specific assets in the defendant's possession; the United States possessed a rebuttable presumption to certain damages; and the defendant "apparently concede[d] the seriousness of the government's complaint against it" by not challenging the government's likelihood of success. *Id.* at 1331-33. Here, California has no claim in any specific assets; there is *no* presumption that California is entitled to *any* damages; and Corteva has not conceded—and will not concede—that California has viable claims against it. Moreover, the opinion was issued ten years before the Supreme Court's decision in *Grupo Mexicano*, which rejected asset-freezing injunctions in cases like the one now before this Court.

***The Public Interest Disfavors a Preliminary Injunction.*** No court has ever enjoined a corporate transaction under similar circumstances, and doing so here would send an extraordinary message to corporations nationwide—that any single plaintiff raising speculative concerns about a future judgment could override the business judgment of a company's board if it just waits long enough to assert its claims and asserts its damages will be large. That is not in the public interest. *See Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 274 (3d Cir. 1978) (explaining that "directors must be given wide latitude in their handling of corporate affairs").

The ripple effects would also extend far beyond Corteva, New DuPont, and Chemours. The Plaintiffs' Co-Lead Counsel in the MDL have represented to the District Court that the DuPont Defendants' combined potential exposure is, at most, "only three to seven percent of the MDL defendants' total alleged PFAS-related liabilities." (*See* Dkt.4471, at 22.) Numerous other entities have similar or greater potential PFAS exposure, and freezing Corteva's assets based on speculative claims would suggest that these entities too are financially unstable; the effects of such an injunction would not be limited to Corteva, and the blast radius of California's requested relief would be staggering, subordinating the informed business judgment of directors and management—who possess superior information and incentives—to the speculative claims of a single litigant.

For that reason, no court—and certainly no court of appeals—has ever enjoined a bona fide transaction where, as here, the plaintiff lacks ***any*** underlying judgment, and the result of the transaction would be two independent, investment-grade, public corporations, which third-party opinions clearly demonstrate are capable of satisfying their respective obligations.

* * * * *

California's arguments are wholly deficient, and the Court should reject California's arguments in full. But if the Court believes that California's extraordinary request should be considered, the Court still should decline

California's request and instead remand to the District Court with instructions to consider California's motion for leave on the merits. Because of its dilatory litigation tactics, however, California has denied Corteva an opportunity to disprove California's conclusory factual assertions and expose its flawed legal theories, which Corteva would be entitled to do before this Court could grant California's request for unprecedented relief. The Court should not reward California's gamesmanship.

## III. California Is Not Entitled to Summary Reversal.

Summary reversal is appropriate only where "the issues raised on appeal are in fact manifestly unsubstantial and appropriate for disposition by motion," and the District Court's order resulted in a "*demonstrably erroneous* application of federal law." *Strickland v. Moritz*, 149 F.4th 378, 405 (4th Cir. 2025). California can meet none of these requirements.

A district court's docket management decisions, including the denial of leave, are reviewed for abuse of discretion. *Bouvet*, 169 F.4th at 443. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Because a "district court's inherent authority to manage its [MDL] docket . . . is strong," *Bouvet*, 169 F.4th at 445, a district court abuses its discretion only if "it acts arbitrarily or irrationally, fails to consider judicially

recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law," *see Cline-Thomas v. Keels*, 742 F. App'x 761, 761 (4th Cir. 2018) (quoting *United States v. Dillard*, 882 F.3d 93, 96 (4th Cir. 2018)).

The District Court concluded that a sprawling multidistrict litigation, which contains *no* allegations about the Vylor Transaction, is not the best vehicle for an eleventh-hour effort to halt a major corporate transaction. (Dkt.11627.) It is not an abuse of discretion for a court to manage its docket accordingly.

For its part, California does not argue that the District Court acted irrationally or failed to consider relevant factors. Nor does California identify any "clear error in factual findings" or "mistake of law." *See Platt v. Mansfield*, 162 F.4th 430, 438 (4th Cir. 2025) (citation omitted). Instead, California attacks the order as an improper ruling on venue and asserts that forum is *never* an appropriate consideration for an MDL court. (Mot. at 13-14.) But a court overseeing an MDL has "authority to decide all pretrial motions," including those that "enforce venue requirements." *In re Korean Air Lines Co.*, 642 F.3d 685, 699 (9th Cir. 2011).

This Court's decision in *Maldini v. Marriott International* does not suggest otherwise. 140 F.4th 123 (4th Cir. 2025). There, this Court held that "an MDL's venue does not dictate venue *for the underlying actions*." *Id.* at 133 (emphasis added). But that truism has no bearing on an MDL court's ability to

dictate whether it is the appropriate court to rule on claims that are ***not included*** in California's "constituent case." *See id.* California has not pleaded any causes of action concerning the Vylor Transaction in its Complaint. It is within the District Court's discretion to prevent California from hijacking MDL proceedings with unpled claims. The Court should reject California's attempt to disrupt the "just and efficient conduct" of the MDL. 28 U.S.C. § 1407(a).

## CONCLUSION

For the reasons stated herein, California's Motion should be denied in full and with prejudice.

Respectfully submitted,

*/s/ Michael T. Reynolds*
Michael T. Reynolds
J. Wesley Earnhardt
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
mreynolds@cravath.com
wearnhardt@cravath.com

*Counsel for Corteva, Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this response complies with the type-volume limits under Federal Rule of Appellate Procedure 27(d)(2) and Fourth Circuit Local Rule 27 because it contains 5,187 words excluding the portions not subject to counting under the applicable rules. This response complies with Federal Rules of Appellate Procedure 32(a)(5) and (6) and Fourth Circuit Local Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: September 24, 2026

*/s/ Michael T. Reynolds*
Michael T. Reynolds

## CERTIFICATE OF SERVICE

I certify that on September 24, 2026, I served the foregoing response on counsel by CM/ECF. Counsel for Plaintiff-Appellant are all registered ECF users and will be served by the ECF system.

Dated: September 24, 2026

*/s/ Michael T. Reynolds*
Michael T. Reynolds