**No. 26-2295**

**In the United States Court of Appeals**
**for the Fourth Circuit**

THE PEOPLE OF THE STATE OF CALIFORNIA,
*ex rel.* ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA

*Plaintiff-Appellant*,

v.

3M COMPANY, et al.

*Defendant-Appellee.*

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCT LIABILITY LITIGATION

On Appeal from the United States District Court for the District of South Carolina
(Richard M. Gergel, District Judge)

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL AND SUMMARY REVERSAL

NICHOLAS G. CAMPINS (SBN 238022)
DIJE NDREU (SBN 251278)
BRENDAN HUGHES (SBN 333690)
Deputy Attorneys General
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
DEBORAH M. SMITH (SBN 208960)
Senior Assistant Attorney General

Stephanie D. Biehl
Ashley B. Campbell
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
(628) 231-2500
stephanie@sheredling.com
ashley@sheredling.com

## TABLE OF CONTENTS


**INTRODUCTION ........ 1**

**ARGUMENT ........ 2**

I. This Court Has Jurisdiction. ........ **2**

II. This Court Should Grant an Injunction Pending Appeal. ........ **3**

A. The District Court Erroneously Denied Leave. ........ 3

B. California's Equitable Claims Authorize a Pre-judgment Asset-Freezing Injunction. ........ 5

C. California Will Likely Succeed on Its Equitable Claims. ........ 7

D. California Will Suffer Immediate Irreparable Harm Absent an Injunction. ........ 8

E. The Equities and Public Interest Favor an Injunction. ........ 9

III. California Does Not Seek to Circumvent the District Court. ........ **11**

**CONCLUSION ........ 11**

**CERTIFICATE OF COMPLIANCE ........ 14**

**CERTIFICATE OF SERVICE ........ 15**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. WDC Holdings LLC*,
2021 WL 3878403 (4th Cir. Aug. 31, 2021) .......... 5

*Dietz v. Bouldin*,
579 U.S. 40 (2016) .......... 3, 4, 5

*Doe v. Mast*,
173 F.4th 524 (4th Cir. 2026) .......... 3

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
835 F.2d 554 (5th Cir. 1987) .......... 10

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
169 F.4th 436 (4th Cir. 2026) .......... 1, 2, 4

*In re Korean Air Lines Co., Ltd.*,
642 F.3d 685 (9th Cir. 2011) .......... 5

*In re Tax Refund Litig.*,
723 F.Supp. 922 (E.D.N.Y. 1989) .......... 5

*Jones v. Rickman*,
2019 WL 2057271 (W.D.N.C. May 9, 2019) .......... 4

*Kemp v. Peterson*,
940 F.2d 110 (4th Cir. 1991) .......... 6

*Lutz v. United States*,
853 F.3d 131 (4th Cir. 2017) .......... 3

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) .......... 5

*People v. ConAgra Grocery Prods. Co.*,
227 Cal.Rptr.3d 499 (2017) .......... 6, 8

*Rahman v. Oncology Assocs.*,
198 F.3d 489 (4th Cir. 1999) .......... 5, 6, 11

*Roswell v. Mayor & City Council of Balt.*,
671 F.Supp.3d 607 (D. Md. 2023) .......... 9

*United States v. Bayshore Assocs., Inc.*,
934 F.2d 1391 (6th Cir. 1991) ..........3

*Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*,
172 F.4th 976 (7th Cir. 2026) ..........9

*Wudi Indust. (Shanghai) Co., Ltd. v. Wong*,
70 F.4th 183 (4th Cir. 2023) ..........11

**Statutes**

9 U.S.C. §16(a)(1)(A) ..........2

28 U.S.C. §1292(a)(1) ..........2

**Rules**

Fed. R. App. P. 8(a)(2)(B)(ii), 27(a)(2) ..........10

Fed. R. App. P. 27(d)(2) ..........14

Fed. R. App. P. 32(a)(5) ..........14

Fed. R. App. P. 32(a)(6) ..........14

Fed. R. Civ. P. 83(b) ..........4

## INTRODUCTION

This Court should intervene to temporarily stop a transaction that would leave Corteva undercapitalized and unable to meet its enormous liabilities to California and others for grave environmental and public health harms. The district court clearly erred in refusing to hear California's Proposed Motion—a decision Corteva hardly defends. And while Corteva asserts that California improperly seeks relief from this Court in the first instance, it was Corteva that opposed California's motion for leave, and it is California that now seeks to maintain the status quo so the district court can decide whether to impose an asset-freezing injunction, and in what form.

Corteva's arguments on jurisdiction and defending the district court flout this Court's holdings in *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 169 F.4th 436 (4th Cir. 2026) ("*AFFF*"). Corteva's positions on the availability of asset-freezing injunctions defy longstanding precedent. And in disputing the equities, Corteva offers no affidavits, documentary evidence, or other cognizable information, relying only on the say-so of counsel to assert non-specific harms and rebut California's extensive record. Meanwhile—including while this emergency appeal has been pending—Corteva has continued to engage in some of the exact asset-dissipation maneuvers that California seeks to prevent. This Court should preserve the status quo and ensure California has its day in court.

# ARGUMENT

## I. This Court Has Jurisdiction.

*AFFF* confirms this Court's jurisdiction. Just as the statute there allowed appeal from an order "refusing a stay," 9 U.S.C. §16(a)(1)(A), so too does §1292(a)(1) make appealable an order "refusing [an] injunction[]." *See AFFF*, 169 F.4th at 443. And just as the "denial of leave to file" the *AFFF* motion was appealable because it "refused [defendant] a stay, even if it didn't explicitly say so," the denial of leave here is appealable for "refusing" a preliminary injunction. *Id.*

Corteva alludes to unspecified differences between §1292(a)(1) and 9 U.S.C. §16(a)(1)(A), Opp.6, but both premise appealability on the same "refusing" language. Corteva is incorrect to characterize the district court's denial as anything but its "final word on [California's] request," Opp.5, when its venue-based rationale made clear it would not entertain any future motion. This was not a situation where denial of leave was based on a "curable procedural error, like failing to request a pre-motion conference." *AFFF*, 169 F.4th at 443. Rather, "there was nothing left for [California] to do." *Id.*

It is irrelevant that the order "indicated" California could seek relief in "other venues," Opp.7-8, n.4, when California correctly moved to preserve the availability of equitable relief in the court where it is litigating claims seeking such relief. *See infra* §II.B-C. And Corteva offers no support for its novel theory that §1292(a)(1)

contains a sweeping jurisdictional carve-out for otherwise appealable orders because another court might grant similar relief.

Corteva is wrong that California failed to show the challenged "order (1) 'may have a serious, perhaps irreparable consequence,' and (2) 'can only be effectually challenged through immediate appeal." Opp.5 (quoting *Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017)). That "two-pronged inquiry" is not relevant, as it applies to evaluate whether an order has the "practical effect" of granting or denying an injunction, not to orders refusing express preliminary injunction motions. *Doe v. Mast*, 173 F.4th 524, 533 (4th Cir. 2026); *see also United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1395-96 (6th Cir. 1991) (explaining distinction and collecting cases). Nonetheless, California would easily satisfy those factors given its clear showing of irreparable harm and this Court's inability to "effectively review the order after final judgment" when Corteva will imminently consummate the Vylor Spinoff. *Lutz*, 853 F.3d at 140.[1]

## II. This Court Should Grant an Injunction Pending Appeal.

### A. The District Court Erroneously Denied Leave.

The district court's order is not a justifiable exercise of its "inherent authority to manage [its] docket[]." Opp.21 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)).

[1] Corteva wrongly asserts that California has not satisfied this Court's Local Rule 8, *see* Opp.7-8, as it would have been impracticable to first go to the district court for reasons already stated. *See* Emergency Mot.22.

As this Court recently admonished the same district court, "prevent[ing] a party" from filing non-frivolous motions "authorized by the Federal Rules of Civil Procedure" is an abdication of docket-management duties, *AFFF*, 169 F.4th at 444-45, not a "reasonable response to a specific problem," *Dietz*, 579 U.S. at 45-46 (quoting Fed. R. Civ. P. 83(b)). The district court's denial of leave repeats the same error and warrants summary reversal.

The district court demonstrably erred in denying leave based on its perception that other venues are "better suited" to address California's Proposed Motion. *See* Ex_18; Emergency Mot.13-14. The MDL court is the correct forum for California to seek a prejudgment asset-freezing injunction to preserve California's ability to recover on its underlying claims *in this action*. *See infra* §II.B-C. California cannot simply pick another forum and seek an injunction untethered to any complaint in that forum. *Cf., e.g., Jones v. Rickman*, No. 5:18-CV-00181-FDW, 2019 WL 2057271, at *3 (W.D.N.C. May 9, 2019) ("The Court cannot assess Plaintiff's likelihood to succeed on the merits and cannot grant a preliminary injunction without a proper underlying complaint."). And because California seeks to *prevent* the Vylor Spinoff, it cannot wait until the transaction closes, as Corteva suggests. Opp.18. In refusing to hear California's time-sensitive motion in the only court where California is pursuing its claims, the court improperly deprived California of its "substantive rights." *See AFFF*, 169 F.4th at 444-45.

The court's rationale is also not "consistent with federal law." *Dietz*, 579 U.S. at 45-46. "[V]enue questions in the constituent cases" of a pending MDL "are resolved *after* pretrial MDL proceedings conclude." *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 133 (4th Cir. 2025) (emphasis added). Corteva cobbles together language from *In re Korean Air Lines Co., Ltd.* to claim that MDL courts may decide "pretrial motions" that "enforce venue requirements," Opp.22 (quoting 642 F.3d 685, 699 (9th Cir. 2011)), but *Korean Air Lines* cites a case concerning venue *for trial*, which in turn reiterates that MDL courts are "unencumbered by venue restrictions" *before* trial. 642 F.3d at 699 (citing *In re Tax Refund Litig*., 723 F.Supp. 922, 924 (E.D.N.Y. 1989)). Regardless, no party sought to "enforce venue requirements," and no authority permits an MDL court to disallow a substantive motion *within* an MDL member case based on speculation about alternative venues.

### B. California's Equitable Claims Authorize a Pre-judgment Asset-Freezing Injunction.

California's equitable claims authorize the injunction requested below. An asset-freezing injunction is available so long as "equitable remedies [a]re claimed." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *4 (4th Cir. Aug. 31, 2021) (quoting *Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999)). California has nuisance, fraudulent transfer, and other equitable claims, not merely money-damages claims.

A nuisance abatement fund to remedy widespread injury is a settled equitable remedy, "not a 'thinly-disguised' damages award." *People v. ConAgra Grocery Prods. Co.*, 227 Cal.Rptr.3d 499, 569-70 (2017). Likewise, California's fraud transfer claim seeks imposition of an equitable constructive trust. *Oncology Assocs.*, 198 F.3d at 498; Ex_4, 11-13. Both "assert[] a cognizable claim to specific assets of [Corteva] or seek[] a remedy involving those assets." *See Oncology Assocs.*, 198 F.3d at 496. It will cost California between $88.3 and $166 billion to address just some of the PFOA natural resource contamination and public health impacts caused by DuPont Defendants.[2] Ex_13 ¶17; Exs_5, 7, 9, 10. The assets needed to equitably fund those remediation efforts are the same assets California would now freeze and which were fraudulently transferred from Old DuPont to Corteva. While California does not yet have a "judgment," a prejudgment asset-freeze by definition precedes a judgment to prevent asset dissipation. *E.g.*, *Oncology Assocs.*, 198 F.3d at 498.

Corteva's argument that California "cannot show that the Vylor Transaction constitutes [a] fraudulent transfer" is a red herring. Opp.14. California seeks injunctive relief to *prevent* consummation of that transaction because, without relief, assets necessary to ensure the viability of the equitable claims California has pleaded "would be depleted or otherwise become unavailable." *Kemp v. Peterson*, 940 F.2d

[2] *See* Ex_4, 1 n.1 (defining "DuPont Defendants").

110, 114 (4th Cir. 1991). To the extent Corteva is arguing the Vylor Spinoff will have no ill effects, unrebutted evidence refutes that.[3] The Vylor Spinoff will render New Corteva undercapitalized by materially diminishing its assets and enterprise value, leaving it unable to satisfy massive PFAS liabilities Corteva seeks to isolate from its Seed business. Ex_8 ¶¶24-28, 30-33, figs. 6-7.[4]

### C. California Will Likely Succeed on Its Equitable Claims.

Corteva does not meaningfully challenge the likelihood of success on California's underlying claims vesting it with an equitable interest in the assets Corteva will continue dissipating.[5]

---

[3] Corteva claims that California's experts "double-count[ed]" liabilities, Opp.14. They did not. Nationwide personal injury liabilities facing Corteva are $12 to $73 billion. Ex_11 ¶¶16, 71-73, tables 8-9; California-specific public health harms are $32.5 billion. Ex_7 ¶11; Ex_11 ¶74, table 10. Corteva also argues California failed to consider Corteva's "contribution and indemnification rights" and cost-sharing agreements limiting exposure, Opp.14-15&n.6, yet DuPont Defendants' 2021 cost-sharing agreement is capped at $4 billion, which is almost exceeded. Ex_12 ¶¶83-84, 92-95.

[4] Corteva's argument that it is "far from insolvent *now*" Opp.14 (emphasis added), says nothing of New Corteva's post-spin financial condition. Even its unsupported projections, *id.*, are silent about New Corteva's post-spin capital structure—*i.e.* the $22 billion, or 53%, diminution in assets it will immediately realize, Ex_8 ¶¶ 24, 32, fig. 7. Finally, Corteva's argument that the Vylor Spinoff will create two "Fortune 500 companies," Opp.11, is irrelevant and ignores Corteva's recently downgraded credit rating. *See* S&P Global, "Corteva Downgraded To 'BBB+' From 'A-' On Spin-Off Of Seed Business; Off CreditWatch Negative; Outlook Stable" (Sept. 17, 2026), https://perma.cc/S8TM-97UY.

[5] Corteva does not contest that the People are likely to succeed on the merits of their Unfair Competition Law or Government Code §12607 claims.

California will likely prevail on its claim that DuPont Defendants' *deception*—not their "generat[ion] [of] PFAS pollution," Opp.13-14—make Corteva, which assumed Old DuPont's liabilities, liable for a public nuisance. *ConAgra*, 227 Cal. Rptr. 3d at 525, 529 ("affirmative promotion of lead paint for interior use" constituted public nuisance where defendants knew use was hazardous); Ex_13 ¶¶17, 73-74. By affirmatively promoting PFOA-containing products they knew would be hazardous to human health and the environment, DuPont Defendants substantially contributed to the public nuisance. Ex_13 ¶¶41-43, 46-52, 56-57; Exs_7, 9.

Corteva makes no argument concerning California's existing fraudulent transfer claim beyond "disput[ing] California's allegations regarding prior transactions." Opp.3 n.3. Corteva thus waived an argument that California is unlikely to obtain a constructive trust over Corteva's assets.

### D. California Will Suffer Immediate Irreparable Harm Absent an Injunction.

Absent Court intervention, the Vylor Spinoff will immediately and irreparably harm California and all MDL plaintiffs. Ex_13 ¶¶11-32. Corteva's assertion that California can avoid irreparable harm by waiting for the transaction to close is wrong. Opp.12-13. Vylor and Corteva will have dissipated billions of dollars through shareholder buybacks and dividends by then, placing those funds out of creditors' reach. *See* Ex_13 ¶¶23-27; Ex_8 ¶¶33-36; Ex_12 ¶¶96-114, 124-36. While

Corteva claims "[n]o assets will move beyond California's reach," Opp.2, Vylor assured its shareholders during "Investor Day" on September 15 that its board will authorize a "$3 billion share repurchase program ... following the official separation,"[6] promising the exact irreparable harm predicted.

**E. The Equities and Public Interest Favor an Injunction.**

The substantial public interest favoring an injunction and the immediate irreparable harm to California absent Court intervention outweigh any purported harms of temporarily maintaining the status quo.

Corteva accuses California of "inexcusable delay"[7] in bringing the Proposed Motion but does not contest that it withheld key transaction details until it made a new SEC filing on August 14, just six weeks ago. Ex_17, 2-3. Only then could California sufficiently analyze the transaction, after which California promptly filed its Proposed Motion and supporting materials. *Id.*[8]

---

[6] Vylor, Inc., Tr. of Investor Day, 6 (Sept. 15, 2026), https://perma.cc/M6R8-XHRU; *see also* Corteva, Inc., Tr. of Investor Day, 3 (Sept. 15, 2026), https://perma.cc/9FXA-CCKD ("we will return cash to shareholders").

[7] Corteva's cases only highlight the People's diligence in filing the Proposed Motion one month after Corteva released sufficient information about the transaction. *See Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 991 (7th Cir. 2026) (19 month delay), *Roswell v. Mayor & City Council of Balt.*, 671 F.Supp.3d 607, 618 (D. Md. 2023), *aff'd*, No. 23-1567, 2023 WL 8728503 (4th Cir. Dec. 19, 2023) (unexplained two-year delay).

[8] Corteva misleadingly asserts that California filed its amended complaint "days before" the Proposed Motion, Opp.3, yet California filed it, with a motion for leave, on August 6—before Corteva disclosed key Spinoff details.

Corteva's conclusory and speculative assertions of harm purportedly imposed by a temporary maintenance of the status quo are unsupported by declarations, documentary support, or any cognizable evidence and warrant rejection on that basis alone. *See* Fed. R. App. P. 8(a)(2)(B)(ii), 27(a)(2).[9] Even if considered, those harms are self-imposed and irrelevant. Corteva contends an injunction would harm third-party "stakeholders" and investors and force it to unwind certain financial transactions. Opp.16-17. Yet Corteva suspiciously accelerated the Vylor Spinoff immediately after California filed its Proposed Motion[10] and during the pendency of this appeal.[11]

---

[9] Courts have found the inadequacy of a non-moving party's factual support determinative. *See Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 566 (5th Cir. 1987) (upholding injunction where defendants "offered little evidence to rebut the overwhelming case against them, and [] a vital public interest was at stake").

[10] Corteva filed an amended registration statement on September 15, 2026—before the district court ruled on the Proposed Motion—disclosing *for the first time* that Vylor transferred $3.1 billion to Corteva for its Seed business, which Corteva used to repay some of Vylor's debt to finance the Spinoff. *See* Vylor, Inc., Amended Form 10, Ex. 99.1 at 178, 180, F-15 (Sept. 15, 2026), https://perma.cc/DU5X-7CEQ. California's Proposed Motion—filed before that statement—sought to enjoin this exact leveraged buyout as further "undermin[ing] the strength of New Corteva's capital structure." Exs_4, 33; Ex_8 ¶¶34, 36.

[11] The same day Corteva filed its opposition here, it disclosed that it issued $700 million in senior notes connected with the Vylor Spinoff, Corteva, Inc., Form 8-K (Sept. 24, 2026), https://perma.cc/LWZ7-EZE2, which is roughly the amount remaining of the Vylor cash dividend to be paid to Corteva. *Supra* note 10 (Amended Form 10) 178.

Moreover, California's right to seek a prejudgment asset-freezing injunction when such relief would still be meaningful is "enhanced" because a significant "public interest is at stake." *Oncology*, 198 F.3d at 497, 499; Ex_9 ¶¶13(c)-(d); Ex_7 ¶¶11, 37, 53, 59, 73. This Court should not countenance Corteva's assertion that the public interest favors its board members' "business judgment" over public health and environmental harm. Opp.19-20.

## III. California Does Not Seek to Circumvent the District Court.

Corteva is wrong that California's "true request is that this Court serve as a court of first impression." Opp.8. California seeks summary reversal precisely because it *wants* the district court to quickly consider a preliminary injunction. This Court should preserve the status quo and protect California's rights in the interim, as through an injunction pending appeal, instructions to the district court, and/or a retention of jurisdiction accompanying remand. *E.g.*, *Wudi Indust. (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 188 (4th Cir. 2023) (retaining jurisdiction during remand while holding stay in effect).

## CONCLUSION

This Court should temporarily enjoin the October 1, 2026 Vylor Spinoff pending appeal and grant summary reversal with appropriate safeguards.

Respectfully Submitted,

**ROB BONTA**
**Attorney General of California**

*/s/ Nicholas G. Campins*

NICHOLAS G. CAMPINS (SBN 238022)
DIJE NDREU (SBN 251278)
BRENDAN HUGHES (SBN 333690)
Deputy Attorneys General
JEREMY BROWN (SBN 269159)
Supervising Deputy Attorney General
DEBORAH M. SMITH (SBN 208960)
Senior Assistant Attorney General

California Department of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-0801
Fax: (510) 622-2270
Email: Nicholas.Campins@doj.ca.gov
Dije.Ndreu@doj.ca.gov
Brendan.Hughes@doj.ca.gov
Deborah.Smith@doj.ca.gov
Jeremy.Brown@doj.ca.gov

**SHER EDLING LLP**

*/s/ Stephanie D. Biehl*
STEPHANIE D. BIEHL
ASHLEY B. CAMPBELL
DAVID FRANKEL
MARTIN D. QUIÑONES
MIRANDA C. HOLETON
ANIRUDH (RAJA) KRISHNA
JUSTIN W. CAPONE
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Telephone: (628) 231-2500
Facsimile: (628) 231-2929
Email: stephanie@sheredling.com
ashley@sheredling.com
dfrankel@sheredling.com

marty@sheredling.com
miranda@sheredling.com
rkrishna@sheredling.com
jacpone@sheredling.com

*Attorneys for the People of the State of California, ex rel. Rob Bonta, Attorney General of California*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limits of Fed. R. App. P. 27(d)(2) because it contains 2600 words, excluding the portions exempted by the rules. The motion's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: September 25, 2026

*/s/ Stephanie D. Biehl*
Stephanie D. Biehl

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, I served the foregoing motion on counsel by CM/ECF. Counsel for Defendant-Appellee are all registered ECF users and will be served by the ECF system.

Dated: September 25, 2026

*/s/ Stephanie D. Biehl*
Stephanie D. Biehl